UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBIN ANDERSON, et al.,

    Plaintiffs,

    v.

SELECT PORTFOLIO SERVICING,
INC., et al.,

    Defendants.

Case No. 3:25-CV-420-CCB-AZ

## OPINION AND ORDER

Before the Court is Defendant Nationstar Mortgage LLC's (d/b/a Rushmore Servicing) ("Rushmore") motion to dismiss Plaintiffs Robin and Wallace Anderson's complaint for failure to state a claim. (ECF 15). Plaintiffs oppose this motion. (ECF 17). The Court grants Rushmore's motion for the following reasons.

### I.    RELEVANT BACKGROUND

On May 13, 2025, Plaintiffs filed a complaint against Rushmore and Select Portfolio Servicing, Inc., ("SPS") alleging violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq*., ("RESPA) and 12 C.F.R. §§ 1024.1 *et seq.* ("Regulation X"). The Court begins by summarizing the allegations in Plaintiffs' complaint and highlighting relevant details from supporting documents. *See Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013) ("[W]ritten instruments attached to a pleading become part of that pleading for all purposes." (internal quotation marks omitted)).

After filing for Chapter 7 bankruptcy and receiving a discharge, Plaintiffs reaffirmed a debt of $71,407.14, deferring $15,178.65 of interest accrued prior to the reaffirmation to the maturity of the loan ("the Loan"). The interest rate of the Loan remained at 11.739%, and Plaintiffs were to pay $590.09 in monthly principal and interest payments for 264 months.

The accrued interest amount continued to increase for reasons unknown to Plaintiffs. Plaintiffs point to their April 11, 2024, mortgage statement as an example. The statement, attached to the complaint, shows a "Deferred Principal" amount of $30,201.97. (ECF 1-2 at 2). Based on this and loan transaction histories provided by SPS and Rushmore, Plaintiffs allege that their monthly payments have been consistently misapplied to the Loan. These misapplications, they allege, have negatively affected per diem interest on the loan. Additionally, Plaintiffs allege that Rushmore and SPS have wrongfully imposed a number of delinquency related charges to the Loan, citing the example of an "Other Charges and Fees" fee of $399.80. (ECF 1 ¶ 27).

On or about August 27, 2024, Plaintiffs sent a notice of error ("NOE") to SPS in which they asserted that SPS failed to properly apply Plaintiffs' monthly payments toward the Loan and imposed fees for which there was no reasonable basis. The SPS NOE highlighted two examples of payments Plaintiffs believed were improperly applied in 2016 and 2017 and notified SPS that Plaintiffs believed other payments were inappropriately misapplied. On or about October 9, 2024, SPS responded that Plaintiffs should contact Rushmore for further explanation about past payment application.

2

On or about November 15, 2024, Plaintiffs sent an NOE to Rushmore making the same allegations and citing the same examples of purportedly misapplied payments. The NOE also informed Rushmore that Plaintiffs had previously reached out to SPS and had been told to contact Rushmore. On or about December 18, 2024, Rushmore responded.

In its response, Rushmore informed Plaintiffs that it had investigated their concerns. (ECF 1-6 at 2). It told them that their loan was a "Daily Simple Interest" loan and explained how interest accrual on that type of loan works. (*Id.*) It informed Plaintiffs that the Loan was transferred to Rushmore on November 1, 2017, and Rushmore transferred the Loan to SPS on March 6, 2024. (*Id.* at 2–3). And it stated that "per review of our records, all payments posted accurately with the correct principal and interest split while we serviced the loan." (*Id.* at 3). Finally, it told Plaintiffs that if they "believe that changes need to be made to the loan due to the purportedly misapplied payments by our predecessors, you will need to contact SPS, as they are the new servicer and are the only ones capable of making the necessary adjustments." (*Id.*)

## II.    ANALYSIS

Rushmore moves to dismiss Plaintiffs' complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor when reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (a complaint "must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief"). "[A] formulaic recitation of the elements of a cause of action," and "naked assertions" without supporting facts are inadequate. *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint therefore fails to state a claim if it does not "describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests [or] plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations omitted).

Rushmore moves to dismiss on the grounds that it complied with its obligations under RESPA. In support, it argues that the pleadings show that Rushmore conducted a reasonable investigation and responded to Plaintiffs as required by the statute. Plaintiffs respond by arguing that Rushmore failed to review allegedly misapplied payments that occurred before Rushmore's service period and therefore violated its obligation to reasonably investigate Plaintiffs' concerns.

"RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catelan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011). It provides in relevant part that if a borrower requests information about or identifies an error in the servicing of a loan, the servicer must, within 30 days,

    (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

    (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

        i.     to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

        ii.    the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

    (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

        i.     information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

        ii.    the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2). RESPA also prohibits servicers from failing "to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E). One such regulation, Regulation X, provides in relevant part that a servicer must respond to a notice of error by either:

    (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

### a. Investigation of Past Payments

In opposition to Rushmore's motion to dismiss, Plaintiffs primarily argue that Rushmore failed to "conduct[] a reasonable investigation" because Rushmore failed to investigate the two examples Plaintiffs allege show misapplication of payment. 12 C.F.R. § 1024.35(e)(1)(i)(B). The first of these examples involved an allegedly misapplied payment on August 30, 2016, and the second involved an allegedly misapplied payment on June 15, 2017. (ECF 1-5 at 3). Both parties agree that these payments occurred before Rushmore serviced the Loan, and that Rushmore transferred the Loan to SPS before it received Plaintiffs' NOE. But Plaintiffs argue that Rushmore still had a duty to investigate those payments and failed to do so.

To establish the duty to investigate, Plaintiffs point to a provision of Regulation X that permits servicer noncompliance with the regulations governing response to NOEs only if "[a] notice of error is delivered to the servicer more than one year after . . . [s]ervicing for the mortgage loan that is the subject of the asserted error was transferred from the servicer receiving the notice of error to a transferee servicer . . . ." 12 C.F.R. 1024.35(g)(1)(iii)(A). And to show that Rushmore failed to comply with this duty, they

6

point to Rushmore's response to their NOE, in which Rushmore informed them that per its investigation, "all payments posted accurately with the correct principal and interest split while we serviced the loan." (ECF 1-6 at 3).

The alleged misapplications of payment took place on August 30, 2016, and June 15, 2017. Rushmore took the Loan over on November 1, 2017, and transferred the Loan to SPS on March 6, 2024. Plaintiffs sent their NOE to Rushmore on or about November 15, 2024. So it is clear that Rushmore had a duty to respond to Plaintiffs' NOE because it received the NOE less than a year after it transferred the Loan to SPS. *See* 12 C.F.R. 1024.35(g)(1)(iii)(A).

Less clear is Rushmore's duty to investigate payments allegedly misapplied before it serviced the Loan. Though Plaintiffs identify those misapplied payments as illustrative examples of their concerns, they cite no authority in their brief that a reasonable investigation by Rushmore, no longer the Loan's servicer, needed to include an audit of payments applied before Rushmore serviced the Loan. The closest authority relied upon is *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016), which holds that "[RESPA] makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary." *Renfroe*, however, was addressing whether a RESPA claim can be supported by damages that occurred prior to the sending of an NOE. *See id.* It does not support the assertion that a reasonable investigation necessarily requires a former servicer to investigate alleged misapplied payments that occurred before its service period.

In any event, the pleadings do not allege that Rushmore did not investigate the allegedly misapplied payment examples. Instead, they allege that, "[a]s to the payment misapplication errors, Rushmore instructed Plaintiffs to contact SPS 'as they are the new servicer and are the only ones capable of making the necessary adjustments.'" (ECF 1 at 8 (quoting ECF 1-6 at 3)). This allegation deviates somewhat from the NOE response attached to the complaint, which states in full that if Plaintiffs "believe that changes need to be made to the loan due to the purportedly misapplied payments by our predecessors, you will need to contact SPS, as they are the new servicer and are the only ones capable of making the necessary adjustments." (ECF 1-6 at 3). When documents attached to pleadings contradict the content of the pleadings, the documents control, so the Court takes the quoted portion of the NOE response to be the substance of the allegation. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Thus, Plaintiffs do not actually allege that Rushmore failed to investigate the alleged misapplied payments. Instead, they allege Rushmore told them that if they believed payments were misapplied, they should contact SPS, because Rushmore lacked the capacity to correct those misapplications.

At the pleading stage, well-pled allegations are taken as true. *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 478 (7th Cir. 2025). But for the Court to take an allegation as true, Plaintiffs must actually plead it. Here, Plaintiffs note in their brief that "[t]here are no allegations in the Complaint or any support in the Rushmore Response that Rushmore reviewed the application of payments before Rushmore serviced the Loan." (ECF 17 at 7–8). Therefore, Plaintiffs seem to suggest, the Court should assume that

8

Rushmore did not conduct such a review. In effect, they ask the Court to conclude that they allege Rushmore's failure to investigate the past misapplied payment examples by not alleging the contrary. This kind of negative allegation does not work. Plaintiffs do not actually allege that Rushmore failed to investigate the misapplied payment examples. Thus, this argument fails.

### b.  Sharing of Findings with SPS

Plaintiffs also argue that Rushmore's direction of "Plaintiffs to SPS fails to address any concerns raised by Plaintiffs and further supports the notion that Rushmore failed to perform a reasonable investigation" because if Rushmore's investigation had been reasonable, it would have shared its findings with SPS, "allowing these errors to be corrected." (ECF 17 at 11). But this does not hold water. As an initial matter, Plaintiffs identify no authority holding that a former servicer's failure to share the findings of its investigation with a current servicer makes the former servicer's investigation unreasonable. But even if a reasonable investigation required such an action, Rushmore's findings were that no errors occurred. (ECF 1-6 at 3). So, had Rushmore shared its findings with SPS, there would have been no errors to correct. This argument also fails.

### c.  Statement of Reasons

Finally, Plaintiffs briefly argue that Rushmore failed to include a statement of reasons for their conclusion that no errors occurred. They argue that the reasons Rushmore provided were formulaic and nonspecific, and the attached statements do not address the validity of the amounts listed. But Rushmore's response, attached to the

9

complaint, establishes that it explained how interest on Plaintiffs' Loan was calculated, provided the initial Loan statement as well as the first and last Rushmore Loan statements, and informed Plaintiffs that it investigated payments while it serviced their Loan and concluded that there were no errors. (ECF 1-6 at 2–3). It also provided Plaintiffs with the documents it relied upon to make this determination, and directed Plaintiffs to their current servicer, SPS, if they objected to Rushmore's conclusion. This is not the type of "form letter with no individualized features" that courts have found insufficient. *Marais v. Chase Home Finance, LLC*, 24 F. Supp. 3d 712, 717 (S.D. Ohio 2014); *see also Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1190 ("The sending of a template or form letter which fails to substantively address concerns raised by the borrower's inquiry does not satisfy the servicer's obligations under Regulation X's error resolution procedures.").

Plaintiffs close their response in opposition by stating that "even if Rushmore had performed an investigation into the errors raised by Plaintiffs, there is nothing in the pleadings to support that such an investigation was reasonable." (ECF 17 at 12). This inverts the standard. The pleadings do not need to support that the investigation was reasonable for Rushmore to prevail on a 12(b)(6) motion to dismiss. Instead, to survive such a motion, Plaintiffs must plead facts plausibly supporting the conclusion that the investigation was unreasonable. *See McCauley*, 671 F.3d at 616 (finding that a complaint "must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief" to survive a motion to dismiss (internal quotation marks omitted)). Here, they have not done so.

10

### III.    CONCLUSION

For these reasons, Rushmore's motion to dismiss, (ECF 15), is **GRANTED.**

Plaintiffs' claim against Rushmore is **DISMISSED WITHOUT PREJUDICE.**

SO ORDERED on March 30, 2026.

                /s/*Cristal C. Brisco*
                CRISTAL C. BRISCO, JUDGE
                UNITED STATES DISTRICT COURT